IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **TAYLOR ENERGY COMPANY LLC,** | * | CASE NO. 16-12C |
| Plaintiff, | * | |
| **VERSUS** | * | JUDGE NANCY B. FIRESTONE |
| | * | |
| **THE UNITED STATES OF AMERICA,** | | |
| | * | |
| **Defendant.** | | |
| *     *     *     *     *     *     *     * | | |

## TAYLOR'S MOTION AND INCORPORATED MEMORANDUM FOR SUMMARY JUDGMENT ON COUNT ONE OF THE COMPLAINT

CARL D. ROSENBLUM, T.A.
ALIDA C. HAINKEL
LAUREN C. MASTIO
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 589-8296
crosenblum@joneswalker.com

And

JOHN F. COONEY
PAUL A. DEBOLT
Venable LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone: (202) 344-4000

**Attorneys for Plaintiff,
Taylor Energy Company LLC**

## TABLE OF CONTENTS

Question Presented ..................................................................................................................1

Statement of the Case ..............................................................................................................2

I.     NATURE OF THE CASE ................................................................................................2

II.    STATEMENT OF THE FACTS ......................................................................................2

Argument ..................................................................................................................................7

I.     SUMMARY JUDGMENT STANDARD. ........................................................................7

II.    THE GOVERNMENT BREACHED THE CONTRACT IN 2015 WHEN IT UNILATERALLY SOUGHT TO IMPOSE AN INDEFINITE TERM FOR TAYLOR'S REMAINING PERFORMANCE. ..................................................................8

      A.     Both Louisiana Law and Federal Common Law Require that a Contract Be Performed Within a "Reasonable Time." ............................................8

      B.     Suspending the Time for Taylor's Performance of the Contract Indefinitely, and Potentially in Perpetuity, Is Not Reasonable .........................11

Conclusion ..............................................................................................................................15

CERTIFICATE OF SERVICE ................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Adarbe v. United States*,
    58 Fed. Cl. 707 (2003) .................................................................................................. 7

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..................................................... 7

*BASR P'ship v. United States*,
    795 F.3d 1338 (Fed. Cir. 2015) ....................................................................................... 7

*B-E-C-K Constructors v. United States*,
    571 F.2d 25 (Ct. Cl. 1978) .............................................................................................. 8

*Big Oak Farms, Inc. v. United States*,
    131 Fed. Cl. 45 (2017) .................................................................................................... 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................................... 7

*Lynch v. United States*,
    292 U.S. 571 (1934) ....................................................................................................... 2

*Rodrigue v. Aetna Casualty & Surety Co.*,
    395 U.S. 352 (1969) ..................................................................................................... 11

*Societe Anonyme Des Ateliers Brillie Freres v. United States*,
    160 Ct. Cl. 192 (1963) ........................................................................................... passim

*Sod Farm, L.L.C. v. Lakewood Development, L.L.C.*,
    2011-1203 (La. App. 1 Cir. 3/28/12); 2012 WL 1070020, at *4 ....................................... 9

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
    833 F.2d 1560 (Fed. Cir. 1987) ...................................................................................... 7

**Statutes**

28 U.S.C § 1491(a) .................................................................................................................... 2

43 U.S.C. § 1331 ....................................................................................................................... 3

43 U.S.C. § 1333(a)(2)(A) ....................................................................................................... 11

43 U.S.C. § 1347(b) .......................................................................................................... 12, 13

Louisiana Civil Code Article 1778 ................................................................................. 8, 14, 15

Louisiana Civil Code Article 2053 ....................................................................................... 9, 10

**Rules**

Rule 56 of the Rules of the Court of Federal Claims............................................................... 1, 7

**Regulations**

30 C.F.R § 556.904 ....................................................................................................................... 3

30 C.F.R. § 250.107 ............................................................................................................... 12, 13

30 C.F.R. § 250.1710 .................................................................................................................. 12

30 C.F.R. § 250.1725 .................................................................................................................. 12

30 C.F.R. § 250.1740 .................................................................................................................. 12

30 C.F.R. § 556.54(a)(2) ............................................................................................................. 13

30 C.F.R. § 556.58 ...................................................................................................................... 13

# TAYLOR'S MOTION AND INCORPORATED MEMORANDUM FOR SUMMARY JUDGMENT ON COUNT ONE OF THE COMPLAINT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff, Taylor Energy Company LLC ("Taylor"), respectfully files this Motion for Summary Judgment on Count One of the Complaint (the "Motion")[1]. Taylor requests that this Court grant summary judgment in its favor concluding that the Government breached the March 19, 2008 Trust Agreement ("Contract") when it publicly announced in 2015 that it would unilaterally impose an indefinite term for Taylor's performance under that agreement. In support of this Motion, Taylor relies upon the Complaint (Rec. Doc. 1), the Trust Agreement (Rec. Doc. 1 at Ex. 1), the 2015 US Views document (Rec. Doc. 11-13), the 2015 public web postings on a Government website (Rec. Doc. 11-14), and the Declaration of William W. Pecue II (attached hereto as Exhibit "A"). As there is no genuine dispute as to any material fact and Taylor is entitled to judgment as a matter of law on Count One, this Motion should be granted.

## QUESTION PRESENTED

Whether summary judgment should be granted in favor of Taylor on Count One of its Complaint because the Government breached the Contract in 2015 when it unilaterally imposed an unreasonable indefinite, and perhaps perpetual, term for Taylor's performance under that agreement.

---

[1] Taylor acknowledges that it is premature for the Court to address the merits of this Motion until the Court resolves the pending RCFC 12(b)(1) Motion to Dismiss (Rec. Doc. 11) filed by the Government. However, to the extent that the Court elects to address the pending RCFC 12(b)(6) Motion to Dismiss and/or the basis of the Government's Opposition to Taylor's pending Motion for Jurisdictional Discovery (Rec. Doc. 16), which relies on Government's RCFC 12(b)(6) argument, Taylor requests that the Court address this Motion at the same time.

**STATEMENT OF THE CASE**

I.    **Nature of the Case**

This case presents straightforward contract claims against the Government. Taylor filed its Complaint pursuant to the Tucker Act, 28 U.S.C § 1491(a), arising out of the Government's breach of the Contract it voluntarily entered into with Taylor. Specifically, as set forth in Count One of the Complaint, the Government breached the Contract in 2015 when it unilaterally imposed an indefinite term for Taylor's performance under that agreement. Taylor files the instant Motion for Summary Judgment because no genuine dispute exists as to any material fact regarding this Count One claim, and summary judgment is warranted as a matter of law. Taylor's Motion should be granted.

II.    **Statement of the Facts**

On March 19, 2008, Taylor, as Settlor, and the United States of America, acting by and through the Minerals Management Service ("MMS") as Beneficiary, entered into the Contract. Rec. Doc. 1 at Ex. 1. The Contract, a voluntary agreement <u>not</u> required by any statute or agency regulation,[2] specifies that the parties entered into it "to fulfill <u>certain</u> obligations to plug and abandon wells, remove a portion of the platform and facilities, clear the seafloor of obstructions, and take corrective action associated with wells and facilities" at Mississippi Canyon 20 ("MC20") on the Outer Continental Shelf ("OCS") in the Gulf of Mexico. (emphasis added) *Id.*; *see* Exhibit "A," at ¶¶ 7 and 12. Pursuant to the Contract, Taylor placed $666,280,000 into a trust account, with JP Morgan Chase Bank, N.A. acting as Trustee. *See* Exhibit "A," at ¶ 8.

---

[2] By its voluntary decision to enter into an agreement with Taylor with respect to the performance of the specific decommissioning Obligations designated in the Contract, the Government obligated itself to abide by the rules of contract law that apply in the private-party context. *Lynch v. United States*, 292 U.S. 571, 579 (1934) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private parties.") *See* Rec. Doc. 26 at 71-73.

The term "Obligations" is defined in the Contract as "the duties and costs" of Taylor "pertaining thereto to abandon wells, remove the platform and other facilities, clear the seafloor of obstructions, and take corrective action associated with wells as set forth in Schedule A attached hereto arising pursuant to the terms of the Leases and applicable federal regulations related to such Leases." Rec. Doc. 1 at Ex. 1, ¶ 1.2(d). The Contract further specifies that the term "Work" "shall mean operations to satisfy the Obligations and shall include the costs of any equipment, supplies and fees incurred to perform the Work." *Id.* at ¶ 1.2(g). And, the Contract does not establish an "all-purpose fund" to address whatever regulatory requirements the Government may seek to impose on Taylor.[3]

Schedule A attached to the Contract lists five categories of 29 separate activities (the "Obligations") that Taylor was to perform and provides cost estimates associated with each Obligation. The five categories of the 29 separate activities and their associated costs are:

| | | |
|---|---|---|
| (1) | Plug and Abandon each of 25 wells[4] | $25.5 million per well totaling $637.5 million |
| (2) | Remove the deck and flare boom from Platform A | $6.245 million |
| (3) | Clear seafloor of obstructions | $6.535 million |
| (4) | Remove pipelines | $3 million |

---

[3] Because the Contract is a voluntary agreement and because this litigation does not affect Taylor's regulatory responsibilities, see Rec. Doc. 1 at ¶¶ 8 and 65, the Government's discussion in its pending Motion to Dismiss of Taylor's regulatory responsibilities under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et. seq.* ("OCSLA") is not material to this motion. Similarly, the Contract, as a voluntary agreement, is not a "lease-specific abandonment account" pursuant to 30 C.F.R § 556.904 (formerly 30 C.F.R. § 556.56). Nor are the terms and condition of the Contract consistent with the regulatory requirements of a lease-specific abandonment account. *See* Rec. Doc. 26 at 74-76.

[4] Of the 28 wells at MC20, three had been temporarily abandoned before Hurricane Ivan and were considered to be permanently plugged and abandoned by the Government following Ivan.

(5) Remove contaminated soil                    $13 million

The Contract does not contain an express time period to complete the performance of the Obligations. *See* Rec. Doc. 1 at Ex. 1. Rather, with respect to termination, the Contract provides that it shall terminate upon the "mutual written agreement" of the Government and Taylor or upon Taylor's "compliance with all Obligations as evidenced by written concurrence" of the Government. *Id.* at ¶ 6.8. Finally, Section 6.9 of the Contract provides that the agreement "shall be governed by and construed in accordance with the laws of the State of Louisiana without giving effect to that state's conflicts of laws rules . . . ." *Id.* at ¶ 6.9.

It cannot be disputed that, since entering into the Contract over ten years ago in 2008, Taylor has performed the following "Obligations": (1) the plugging and abandonment of 9 of the 25 wells by drilling intervention wells; (2) the removal of the deck and flare boom from Platform A; (3) clearance of the seafloor of obstructions; and (4) the removal of pipelines by flushing and plugging. *See* Exhibit "A," at ¶ 12. After Taylor's completion of the Obligations specified above and before Taylor moved forward with performance of its remaining Obligations, the Unified Command[5] decided to put Taylor's remaining performance on "pause" to provide the parties with time to "evaluate potential ecological impacts" associated with Taylor's performance of those remaining Obligations. Rec. Doc. 11-6 at 1.

Over the almost seven years while the "pause" has been in place, the Unified Command has directed the performance of numerous scientific studies and workshops on potential ecological impacts. Among them, the Unified Command has convened the workgroups and workshops that led to the preparation of the Unified Command's "Consensus Ecological Risk

---

[5] As set forth in the Complaint, to address the MC20 site, the United States Coast Guard established a Unified Command, composed of the Coast Guard, the United States Department of the Interior and Taylor, in the fall of 2007. Rec. Doc. 1 at ¶ 18.

Assessment ("CERA")Report", and the studies and workshops that led to the preparation of the "Final Risk Assessment and Cost Evaluation" ("FRACE") Report. Most recently, the Unified Command directed the preparation of the Final Reports of the Sheen Source Location Work Group. As to the question of "spills" and "leakage," all these scientific reports consistently conclude that no evidence exists of a present and ongoing leak from any of the wells at the MC20 site. *See* Exhibit "A" at ¶¶ 14 and 15; *See* Declaration of Dr. Richard Camilli, attached hereto as Exhibit "B" at Exhibit "1." In fact, in direct response to a question raised by the Government at a recent Unified Command meeting Drs. Camilli and Reddy, who participated in the Unified Command's Chartered Sheen Source Location Work Group, prepared a "modeling analysis." This analysis concluded with a "Summary" that stated, in part:

> "1. There is no detectable contribution to the sea surface sheen from an actively leaking well. All evidence suggests that the sheen is being generated by remnant oil sparged from the sediments within the Dome C & D erosional pit. 2. There is no evidence of a worst case (or greater) corrosion-induced well leak having occurred during the 2012-2017 time period. … 8. Returning to the rum-punch analogy, the results of this analysis does not support the scenario that "rum" (oil from a leaking well) is being added to the sheen source "punch"."

*See* Exhibit "B" at Exhibit "2."

In 2015, while Taylor's performance of the Obligations remaining under the Contract remained on hold, the Government unilaterally sought to impose an "indefinite term" for Taylor's performance of those Obligations. *See* Exhibit "A," at ¶ 18; Rec. Doc. 11-13; Rec. Doc. 11-14; and Rec. Doc. 26-1. Specifically, on or about May 14, 2015, four federal agencies, DOI's BSEE and BOEM, DOJ and USCG, published a document entitled "The United States' Views on the Status of Taylor Energy Company's Obligations at Well Site MC-20 and Taylor Energy's Ongoing Oil Spill" (the "US Views document"). Rec. Doc. 11-13. In the US Views document, the Government, while continuing to question whether "proper well plugging and abandonment

is … currently technologically feasible," stated its intention to withhold indefinitely all of Taylor's funds held in the trust account "in face of … the presence of unplugged and/or unsecured wells." *Id.* at 2. Additionally, the Government stated that the possibility that "improved technology" may come into existence at some unknown point "in the near or more distant future" foreclosed any reliance by Taylor on the unavailability of "existing" technology to address the issues at MC20. *Id.*

The Government further posted three documents on the website of its agency, the Bureau of Safety and Environmental Enforcement of the Department of the Interior ("BSEE"), in May 2015 that publicly disclosed the Government's position on the status of Taylor's MC20 response (the "BSEE web postings"). Rec. Doc. 11-14. In these postings, the Government publicly disclosed that it had placed Taylor's performance of the remaining Obligations under the Contract on an "indefinite hold," stating that "[f]uture work to be performed under the Trust Agreement will be determined based on site conditions and the availability of applicable technology." *Id.* at 2. The Government also reiterated that the "funds provided by Taylor Energy in accordance with the Trust Agreement in 2008 must remain in the Trust to provide for further decommissioning activities." *See* Joint DOI-USCG Statement (Rec. Doc. 11-16).

Through the US Views document and the BSEE web postings, the Government sought, for the first time, to suspend Taylor's performance of its remaining Obligations under the Contract indefinitely and potentially in perpetuity. No statutory or other legal basis supports the Government's position. Accordingly, Taylor files the instant Motion for Summary Judgment on Count One of its Complaint because no genuine dispute as to any material fact exists that the Government breached the Contract by its unilateral insertion into the agreement of an indefinite and potentially perpetual term for Taylor's performance. The only question presented is whether

as a matter of law the Government's action breached the Contract. The Court should grant summary judgment on Count One in Taylor's favor.

## ARGUMENT

I. **Summary Judgment Standard.**

Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy, and inexpensive determination of every action.'" *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Under RCFC 56(a), "summary judgment is appropriate 'when there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law.'" *Big Oak Farms, Inc. v. United States*, 131 Fed. Cl. 45, 51 (2017) (Firestone, J.) (quoting *BASR P'ship v. United States*, 795 F.3d 1338, 1342 (Fed. Cir. 2015), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Adarbe v. United States*, 58 Fed. Cl. 707, 714 (2003) (Firestone, J.) (quoting *Anderson*, 477 U.S. at 247-48, 106 S.Ct. at 2505). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Big Oak Farms, Inc.*, 131 Fed. Cl. at 51 (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2505). A fact is material if it could "affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2505).

"It is proper on a motion for summary judgment for this court to engage in interpretation of contracts and statutes." *Adarbe*, 58 Fed. Cl. at 714 (citations omitted). That is the only thing Taylor seeks in this motion. This case presents straightforward contract claims against the Government based on indisputable facts. Thus, by virtue of this Motion for Summary Judgment,

Taylor simply asks the Court to interpret the Contract by application of standard principles of contract law to resolve whether the Government committed a breach, in 2015, when it unilaterally sought to insert an indefinite term for Taylor's performance.[6]

## II. The Government Breached the Contract In 2015 When It Unilaterally Sought to Impose an Indefinite Term for Taylor's Remaining Performance.

The breach of contract question before this Court set forth in Count One of the Complaint presents a question of contract interpretation regarding whether the Government breached the Contract by unilaterally seeking to insert into it an indefinite and potentially perpetual term or Taylor's performance. As there is no statutory or legal basis for the Government's action, Taylor is entitled to summary judgment.

### A. Both Louisiana Law and Federal Common Law Require that a Contract Be Performed Within a "Reasonable Time."

Louisiana law provides that where, as here, a contract does not contain "an express, fixed or determinable time period" for performance, the contract must be performed within a "reasonable time." La. Civ. Code art. 1778.[7] The unanticipated nonoccurrence of a future certain event can render the time for performance not determinable and uncertain, requiring that the obligation be performed within a reasonable time. *Sod Farm, L.L.C. v. Lakewood*

---

[6] Again, by this litigation, Taylor does not seek a ruling affecting its regulatory responsibilities under OCSLA or the federal regulations. *See* Rec. Doc. 1 at ¶¶ 8 and 65.

[7] Under OCSLA, Louisiana law becomes "surrogate federal law." *See* footnote 10 *infra*. Similarly, under general principles of federal common law applicable to government contracts, "where no time limit is given, it is presumed that performance will be completed within a reasonable time." *Societe Anonyme Des Ateliers Brillie Freres v. United States*, 160 Ct. Cl. 192, 201 (1963) (citations omitted); *see also B-E-C-K Constructors v. United States*, 571 F.2d 25, 31 (Ct. Cl. 1978) (stating that "[i]t is well settled that where a time is not fixed in a contract for performance of an obligation, performance within a reasonable time, dependent upon the circumstances applicable, is required" and further that, "[w]here no time limit is given, it is presumed that performance will be concluded within a reasonable time.") (citations omitted). Thus, regardless of whether the Court applies Louisiana law or Federal common law, the identical principle applies.

*Development, L.L.C.*, 2011-1203 (La. App. 1 Cir. 3/28/12); 2012 WL 1070020, at *4. The nature of the contract, the circumstances surrounding it and pertinent usage and custom define a "reasonable time" for performance of a contract when the contract is silent as to the time for its performance. *See* La. Civ. Code art. 2053.

In *Sod Farm,* the parties entered into a purchase agreement and credit sale, which contained payment provisions that delayed Lakewood's payment until the sale of homes to third parties took place, an event contemplated by the parties in the anticipated normal course of events. 2012 WL 1070020, at *4. Because "Lakewood's failure to begin development of the subdivision changed the premise on which the parties were relying," the court found "that the unanticipated nonoccurrence of a future certain event made the time for performing the payment obligation not determinable and uncertain requiring that the obligation be performed within a reasonable time." *Id.* (citations omitted). The court considered the circumstances surrounding the formation of the credit agreement and the credit sale, the extenuating circumstances as argued by Lakewood,[8] and how the parties looked at the time element.[9] It ultimately held that "the trial court did not err in finding that Lakewood had not made a substantial effort to develop the subdivision and that a reasonable time had passed for initiation of repayment of the debt." *Id.* at *5.

---

[8] "[S]everal unusual problems and extraordinary difficulties" that delayed the process of developing the subdivision included Hurricane Katrina, the indictment of a Councilman, the revision of the parish[county]-wide zoning, the crash of the housing market, the proposed construction of a new highway interchange, and the *lis pendens* placed on the property by Sod Farm. *Id.*

[9] The trial court found that the parties had anticipated and intended that the repayment of the credit portion of the price would begin within two to four years after the credit sale; therefore, a reasonable time had passed for commencement of debt repayment. *Id.* at *5.

In *Societe Anonyme*, a French corporation brought suit against the United States seeking to recover $15,000 held in escrow by the United States. 160 Ct. Cl. at 194. The French corporation asserted its entitlement to recover the sum because its agreement with the United States did not contain an express term regarding the period during which the money would be held in escrow, and, therefore, according to the French corporation, it had ended "by reason of the expiration of a reasonable period of time." *Id.* In contracting to place the money in a suspense account, the United States had agreed to return the money, or at least part of it, once it received clearance from France in accordance with the Brynes-Blum Agreement, a treaty between the two countries. *Id.* at 195. At the time the French corporation filed suit, five years had passed yet the necessary clearance still had not been obtained, and two additional years had passed before the court rendered its decision. *Id.* at 196.

In applying federal law – and consistent with Louisiana principles of contract interpretation[10] – the *Societe Anonyme* court looked to the "circumstances and events" that surrounded the contract's making, its general purpose and the contract language. *Id.* at 199. While acknowledging the United States' argument that "the wheels of international relations grind … slowly," the court observed that "here apparently they did not grind at all." *Id.* at 202. Thus, the court concluded: "[e]ven in the complex world of diplomatic relations, it is difficult to believe that 7 years would not be a sufficient period in which to obtain the clearance of the French Government, or, in the alternative, to recognize the futility of the cause." *Id.* Accordingly, the court rendered judgment in favor of the French corporation "for the sum of $15,000." *Id.*

---

[10] *See* La. Civ. Code art. 2053 (when a contract contains a "doubtful provision," such as silence as to its term, it "must be interpreted in light of the nature of the contract," the circumstances surrounding it and pertinent usage and custom).

Similarly, here, for the reasons discussed below, the grant of summary judgment to Taylor on Count One is appropriate, warranting the return to Taylor of the amount of its funds that remain held in the trust account.

### B. Suspending the Time for Taylor's Performance of the Contract Indefinitely, and Potentially in Perpetuity, Is Not Reasonable

Taylor and the Government entered into the Contract, a voluntary agreement not required by any statute or agency regulation. The parties contractually agreed that the Contract "shall be governed by and construed in accordance with the laws of the State of Louisiana"[11] Rec. Doc. 1 at Exhibit 1, ¶ 6.9. The Contract does not contain an express, fixed or determinable time period for Taylor to complete the performance of the Obligations. *See* Rec. Doc. 1 at Ex. 1. As a general matter, a term that is indefinite and potentially lasts in perpetuity is not a "reasonable time." Moreover, the nature of the Contract, the circumstances surrounding it and pertinent usage and custom establish that a reasonable time for its performance cannot be indefinite and potentially in perpetuity. Nevertheless, in 2015 the Government unilaterally imposed an indefinite term for Taylor's remaining performance under the Contract. *See* Exhibit "A," at ¶ 18.

The nature of the Contract and the circumstances surrounding it center upon Taylor's performance of certain decommissioning Obligations at the MC20 site, including its Obligations to plug and abandon wells, remove the deck and flare boom from the platform, clear the seafloor of obstructions, remove pipelines and remove contaminated soil. With respect to the time limits for performance of decommissioning obligations, the Government's regulations under OCSLA require an operator: (a) to "permanently plug all wells on a lease within 1 year after the lease

---

[11] This is consistent with the OCSLA's adoption of the substantive law of the adjacent state, which, here, is Louisiana, "as surrogate federal law." *See* 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 357 (1969). Furthermore, as set forth above, federal contract common law is fully consistent with Louisiana law on this principle. *See Societe Anonyme*, 160 Ct. Cl. at 202.

terminates," 30 C.F.R. § 250.1710; (b) to "remove all platforms and other facilities within 1 year after the lease or pipeline right-of-way terminates," 30 C.F.R. § 250.1725; and (c) to "verify that the site is clear of obstructions" within 60 days of permanent plugging of a well or removal of a platform, 30 C.F.R. § 250.1740. Indeed, in October 2007, even before entering into the Contract, the Government had ordered Taylor to permanently plug and abandon all wells at MC20 by June 2008, within one year of termination of the leases. *See* Exhibit "A," at ¶ 6.

Given that the parties entered into the Contract over ten years ago and that Taylor completed its last Obligation under the Contract almost seven years ago, a reasonable time for completion of Taylor's performance cannot be some uncertain future date.[12] This is particularly the case here, when the Government's regulatory practice requires completion of decommissioning obligations within one year of lease termination and when, under the circumstances of the MC20 site, it had previously ordered Taylor to permanently plug and abandon all wells within one year of lease termination. Furthermore, the nature of the Contract, the circumstances surrounding it[13] and pertinent usage and custom establish that the term for Taylor's performance of the remaining Obligations cannot be dependent on hypothetical future changes in site conditions nor on the speculative development of technology that does not currently exist. Rather, the Government's regulations specify that decommissioning obligations must be performed within one year of lease termination irrespective of potential changes in site conditions and that an operator must use best "available" and "safest" technology in the performance of its lease operations,[14] not potential new technology that hypothetically may be

---

[12] *See* Rec. Doc. 1 at Ex. 1; Exhibit "A," at ¶ 13.

[13] See Rec. Doc. 1 at ¶¶ 19-33.

[14] *See* Rec. Doc. 1 at ¶ 73 (setting forth the legal requirement to use "best available" and "safest" technology under 43 U.S.C. § 1347(b) and 30 C.F.R. § 250.107); *id.* at ¶ 76; *id.* at ¶ 106. Under

invented at some indefinite point in the future. Simply stated, there is no legal justification for the Government's unilateral insertion in 2015 of an indefinite term for Taylor's performance under the 2008 Contract pending the potential invention of improved technology, in contravention of the legal standard that requires use of best available and safest technology.[15]

The language of Section 4.7 of the Contract readily demonstrates that a reasonable time for performance cannot be indefinite or in perpetuity, by setting forth express time limits of 3½ and 7 years for the release of the hold-back funds "in an amount of $50,000,000 for potential residual Obligations associated with this Trust Agreement." Rec. Doc. 1 at Ex. 1, ¶ 4.7. In fact, the 7-year hold-back period in Section 4.7 mirrors the Government's regulatory requirement that an OCS lessee generally must keep a bond to guarantee its compliance with the lease in place for a period of seven years following lease termination. *See* 30 C.F.R. § 556.58; *see also* 30 C.F.R. § 556.54(a)(2). There is no authority to require the posting of a bond "indefinitely or in perpetuity."

The nature of the contract, the circumstances surrounding it and pertinent usage and custom thus establish that, "even in the complex world"[16] of OCS decommissioning obligations, a period of over ten years cannot meet the reasonableness standard, particularly given that the Government has now asserted that the term for Taylor's performance is indefinite and perhaps in perpetuity.

---

OCSLA, 43 U.S.C. § 1347(b), Congress authorizes the Government to require OCS operators to use "the best available and safest technologies." *See also* 30 C.F.R. § 250.107 (requiring OCS operators to "use best available and safest technology (BAST) whenever practical on all exploration, development, and production operations.").

[15] For this reason, alleged facts to be posited by the Government regarding the status of technology are not material to this Motion.

[16] *Societe Anonyme*, 160 Ct. Cl. at 202.

Accordingly, the Government's position, as publicly announced in 2015 in the US Views document and the BSEE web postings, that Taylor's trust funds must remain in trust indefinitely, and possibly in perpetuity, violates governing Louisiana law, as well as Federal common law, both of which require performance of a contract within a reasonable time. *See* La. Civ. Code art. 1778; *Societe Anonyme*, 160 Ct. Cl. at 202.

While the Government will undoubtedly attempt to mischaracterize Taylor's Count One claim by seeking to introduce immaterial and irrelevant facts in an effort to defeat this Motion, the purported issues related to "improved technology" and alleged "spills" and "leaks" are not material or relevant to Taylor's claims in this litigation. Furthermore, any suggestion that there is an ongoing leak from an MC20 well is directly contrary to the recent Final Reports of the Unified Command's Sheen Source Location Work Group.[17] *See* Exhibit "B" at Exhibit "1". It is also directly contrary to the scientific "modeling analysis" performed to answer a question of the Government raised at a recent Unified Command meeting. *See* Exhibit "B" at Exhibit "2" at Conclusion. Here, the only material facts concern 1) the Government's 2015 unilateral imposition of an indefinite term for Taylor's performance pending a hypothetical change in "site conditions;" 2) the potential invention of "improved technology;" in contravention of statutory and regulatory standards that impose time limits of one year for decommissioning and seven

---

[17] Contrary to the Government's overbroad representation in its Motion to Dismiss that "the Trust Agreement required that the decommissioning efforts using the Trust funds are to continue until the oil leaks have stopped," Rec. Doc. 11 at 19 (emphasis deleted), the Contract references the term "detectable leakage" only with respect to Taylor's entitlement to the release of half of the hold-back amount and solely in the context of a showing of "no detectable leakage" from the "Work completed" by Taylor. Taylor's Count One breach of contract claim is based upon the inability to perform remaining Obligations in the future, not "Work completed" in the past. Moreover, Taylor completed Work with respect to 9 of the 25 wells, and there is no evidence to support the existence of any leakage from a well, much less from one of those 9 wells (i.e., the "Work completed"). *See* Exhibit "B." Accordingly, any purported facts related to leakage are not material to Taylor's Count One Claim before this Court. In this regard, Taylor directs the Court to its pending Motion to Strike (Rec. Doc. 62).

years for bond maintenance; and 3) a requirement to perform OCS lease operations by use of "best available" and safest technology.

At its core, this is a breach of contract case – did the Government breach the Contract in 2015 by its undisputed unilateral insertion of an indefinite and potentially perpetual term for Taylor's performance? It cannot be disputed that the Government publicly asserted in 2015 that the term for Taylor's performance is indefinite and perhaps in perpetuity, which directly contravenes controlling Louisiana law and federal common law applicable to government contracts. *See* La. Civ. Code art. 1778; *Societe Anonyme,* 160 Ct. Cl. at 202; Rec. Doc. 11-16; Rec. Doc. 11-13; Rec. Doc. 11-14.[18] Thus, as a matter of law, this indefinite and perhaps perpetual term of duration for Taylor's completion of its performance of the remaining Obligations under the Contract is unreasonable. Under the uncontested material facts and applicable legal principles, Taylor's Motion for Summary Judgment on Count One must be granted.

## CONCLUSION

For the reasons set forth above, Taylor respectfully requests that this Court grant its Motion for Summary Judgment on Count One and award Taylor all damages appropriate as a result of Taylor's fulfillment of all "Obligations" under the Contract.

---

[18] And once again, Taylor's regulatory responsibilities under OCSLA are immaterial to this breach of contract litigation.

Respectfully submitted this 28th day of March, 2018.

                          *s/Carl D. Rosenblum*
                          CARL D. ROSENBLUM, T.A.
                          ALIDA C. HAINKEL
                          LAUREN C. MASTIO
                          Jones Walker LLP
                          201 St. Charles Avenue, 49th Floor
                          New Orleans, Louisiana 70170-5100
                          Telephone: (504) 582-8000
                          Facsimile: (504) 589-8296
                          crosenblum@joneswalker.com

                          And

                          JOHN F. COONEY
                          PAUL A. DEBOLT
                          Venable LLP
                          600 Massachusetts Avenue, NW
                          Washington, D.C. 20001

                          Telephone: (202) 344-4000

                          **Attorneys for Plaintiff,**
                          **Taylor Energy Company LLC**

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 28th day of March, 2018, a true and correct copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record participating in CM/ECF by operation of the court's electronic filing system.

                          */s/ Carl D. Rosenblum*