**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **TAYLOR ENERGY COMPANY LLC,** | * | **CASE NO. 16-12C** |
| **Plaintiff,** | * | |
| **VERSUS** | * | **SENIOR JUDGE NANCY B. FIRESTONE** |
| | * | |
| **THE UNITED STATES OF AMERICA,** | | |
| | * | |
| **Defendant.** | | |
| *    *    *    *    *    *    *    * | | |

**TAYLOR ENERGY'S RESPONSES TO THE COURT'S QUESTIONS
AS SET FORTH IN ITS ORDER (ECF NO. 100)**

**NOW COMES**, Taylor Energy Company LLC ("Taylor Energy"), through undersigned counsel, which respectfully submits this brief pursuant to this Court's Order dated March 18, 2019 (ECF No. 102) and in response to the three specific questions posed in the Court's Order dated March 14, 2019 (ECF No. 100).

As addressed in the responses below and in Taylor Energy's prior briefing, the doctrine of primary jurisdiction is inapplicable, and the Government's Motion to Dismiss should be denied. There are no currently pending administrative proceedings that implicate the doctrine of primary jurisdiction. Indeed, the Interior Board of Land Appeals' ("IBLA") October 30, 2018 (IBLA 2015-207) decision affirming the denial of Taylor Energy's request for departures or approval of alternate procedures related to Taylor Energy's regulatory obligations arising under the Outer Continental Shelf Lands Act and its regulations (the "IBLA Departure Decision") rendered moot the Government's primary jurisdiction defense to this case. While Taylor Energy has not and decided not to seek judicial review of the IBLA Departure Decision, the IBLA did not have before it and did not address whether the Government, by its conduct, breached the Trust Agreement. Rather, it addressed only whether the agency properly acted within in its

discretion and with rational basis in denying Taylor Energy's request for a departure from its regulatory obligations. Accordingly, and as explained more fully below, the IBLA Departure Decision has no binding effect with regard to Taylor Energy's contractual duties under the Trust Agreement nor with respect to this Court's authority to adjudicate whether the Government's imposition of an indefinite and potentially perpetual term for Taylor Energy's performance of those contractual duties while withholding Taylor Energy's funds in trust constitutes breach of contract. This lawsuit is limited to the specific defined contractual "Obligations" under the Trust Agreement, and, by virtue of this lawsuit, Taylor Energy does not seek and has not asked this Court to relieve it of its regulatory responsibilities. Indeed, Taylor Energy's Complaint expressly states as much. *See* ECF No. 1 at ¶¶ 8 and 65.

As expressly acknowledged by the Government in the Joint Status Report (*see* ECF No. 97 at pp. 25-26), this case is not moot. Importantly, Taylor Energy has not been ordered to perform any of the remaining "Obligations" under the Trust Agreement (to the contrary, it was expressly told not to do so (*see* ECF No. 11-6 at 54, § 6.3.7; *see also id.* at 53, §§ 6.3.1 and 6.3.2)), and, as such, none of Taylor Energy's monies under the Trust Agreement are being used. In fact, none of the trust funds have been used to reimburse Taylor Energy for performance of any of the Trust Agreement "Obligations" for over seven years when Taylor Energy performed the last decommissioning "Obligation" it was authorized to undertake in 2011. Moreover, notwithstanding the foregoing, even if the Government were to order Taylor Energy to perform a specific Obligation covered by the Trust Agreement and the trust funds were implicated, this would not cure the Government's breach of contract that occurred in 2015 when the Government unilaterally imposed an indefinite and potentially perpetual term in violation of applicable contract law.

**1.     This Court Maintains Its Authority under the Tucker Act to Decide Taylor Energy's Breach of Contract Claims Notwithstanding Taylor Energy's Decision Not to Seek Judicial Review of the IBLA Departure Decision.**

This lawsuit is about the Government's breach of the Trust Agreement, a specific contract by and between Taylor Energy and the Government that embodies a specific, defined subset of Taylor Energy's regulatory obligations in addition to other specific contractual terms and obligations that the parties agreed to perform.[1]  More particularly, this lawsuit is about the rules of contract law that do not allow the Government to impose an indefinite and potentially perpetual term for Taylor Energy's performance while withholding Taylor Energy's funds in trust.

Unlike this breach of contract lawsuit, the IBLA proceeding was a challenge to a denial by the Bureau of Safety and Environmental Enforcement ("BSEE") of Taylor Energy's request for a departure or to use an alternate procedure under BSEE's regulatory authority pursuant to 30 C.F.R. § 250.142 and 30 C.F.R. § 250.141.  Specifically, Taylor Energy requested a departure "from further intervention well decommissioning efforts for each of 16 remaining wells at MC-20" and a departure or alternate procedure "authorizing Taylor to allow any contaminated sediments to be left in place with natural sedimentation to provide a continual cap over the affected soils."  The regulations define a "departure" as an "approval granted by the appropriate [Federal] representative for operating requirements/procedures other than those specified in the regulations found in this part.  These requirements/procedures may be necessary to control a well; properly develop a lease; conserve natural resources; or protect life, property, or the marine

---

[1] As set forth in Taylor Energy's prior briefing, the law is clear that, when the Government enters into a contract with a private party, it must abide by the rules of contract law that apply in the private-party context. *Lynch v. United States,* 292 U.S. 571, 579 (1934) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private parties."); *see also Mobil Oil Exploration & Producing Southeast, Inc.*, 530 U.S. 604, 607-08 (2000).

coastal or human environment." 30 C.F.R. § 250.105. The agency's regulatory authority to approve departures or alternate procedures is <u>not</u> at issue before this Court as that authority has nothing to do with the provisions and requirements of the Trust Agreement or the Government's conduct in breach thereof. Similarly, the agency's denial of Taylor Energy's request for departures or approval of alternate procedures has no bearing on Taylor Energy's breach of contract claims here; it relates only to Taylor Energy's regulatory responsibilities, which will remain in full force and effect, regardless of the Trust Agreement.

While the IBLA Departure Decision concerned review of BSEE's denial of a request by Taylor Energy to modify its regulatory obligations through a departure request, in contrast, as Taylor Energy has repeatedly represented to this Court in its Complaint and subsequent pleadings, by virtue of this lawsuit, Taylor Energy is not seeking to be relieved of its regulatory obligations or otherwise asking this Court to modify its regulatory obligations. *See, e.g.*, ECF No. 1 at ¶¶ 8, 65; ECF No. 72 at pp. 21-23 of 45; *see also id.* at n. 8. Instead, this lawsuit is limited to the Government's improper attempt to unilaterally insert into the Trust Agreement an indefinite and potentially perpetual term for Taylor Energy's performance. This lawsuit therefore concerns whether the Government's conduct amounts to a breach of the Trust Agreement under ordinary rules of contract construction and enforcement. Simply put, the IBLA Departure Decision has no binding effect with respect to whether the Government's unilateral imposition of an indefinite and perhaps perpetual term for Taylor Energy's performance under the Trust Agreement violated principles of contract law.[2] Simply stated, the Trust Agreement is

---

[2] Indeed, the provisions of the Trust Agreement were not before the IBLA. For example, unlike the central issues before this Court, the IBLA did not evaluate the Government's 2015 announcements in the US Views document and BSEE web postings of its decision to indefinitely suspend Taylor Energy's performance of the Trust Agreement "Obligations" and its refusal to release Taylor Energy's funds from the trust account.

a contract governed by Louisiana rules of contract law as "surrogate federal law,"[3] the interpretation of which is completely distinct from the issues that were pending before the IBLA related to Taylor Energy's regulatory responsibilities.

Taylor Energy does not dispute that the Trust Agreement references regulations; however, as this Court recognized at the February 9, 2018 Status Conference, "it's an agreement" (*see* ECF No. 52 at 15) that imposes contractual obligations that exist separate and apart from the regulations. It is a contract between the parties that must be interpreted by a court of law. In contrast, the IBLA has no authority to and was not asked to interpret the Trust Agreement. Likewise, the IBLA did not make any determination as to whether the Government breached the Trust Agreement, nor could it. The IBLA was not asked to nor could it control the disposition of Taylor Energy's funds held in trust; rather, the terms of the Trust Agreement interpreted under the controlling legal principles control their disposition. Moreover, only this Court has authority to provide Taylor Energy with the remedy to which it is entitled under its breach of contract claims, *i.e.,* monetary damages.[4] *Cf. United States v. Philip Morris USA, Inc.*, 787 F. Supp.2d 68, 80 (D.C. 2011), aff'd, 686 F.3d 832 (D.C. Cir. 2012).

In the end, the IBLA decided only that the agency acted within its discretion when it denied Taylor Energy's departure request. It did not address or decide whether the Government violated ordinary principles of contract law in breach of its obligations under the Trust

---

[3] 43 U.S.C. § 1333(a)(2)(A) (the civil laws of the adjacent state "are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf ….").

[4] Here, the Court must consider the harm suffered. Ultimately, the harm to Taylor Energy is the monetary damages incurred by it arising from the Government's unilateral modification of the terms of the Trust Agreement by imposition of an indefinite term for Taylor Energy's performance and by its decision to withhold its consent to the release of Taylor Energy's funds in trust indefinitely and potentially in perpetuity.

Agreement by its imposition of an indefinite and potentially perpetual term for Taylor Energy's performance while simultaneously freezing Taylor Energy's funds in trust.

2.  **There Is <u>No</u> Work Taking Place under the Trust Agreement, There Has Been No Work Performed under the Trust Agreement Since 2011, and <u>No</u> Monies Are Being Used From the Trust Agreement.**

To directly answer the Court's question, there is no work taking place under the Trust Agreement and no "monies are being used from the Trust Agreement." The Trust Agreement sets forth specifically defined "Obligations,"[5] which all relate to decommissioning, not containment. And, despite the recent containment activity at the MC-20 site, Taylor Energy still has not been authorized or ordered to engage in any of the specific decommissioning Obligations defined in the Trust Agreement. Indeed, no work under the Trust Agreement has taken place since Taylor Energy completed its performance of the last decommissioning Obligation it was authorized to undertake over seven years ago in 2011.

As an initial matter, it is important to emphasize the distinction between containment actions and decommissioning actions.[6] In the words of Interior's counsel at the September 2018 hearing in this matter, there are two separate "paths." *See* ECF No. 87 at pp. 170, 187-190. The United States Coast Guard ("Coast Guard") addresses path one – containment activities – which fall <u>outside</u> the scope of the Trust Agreement. As a result, Taylor Energy must pay for

---

[5] The term "Obligations" is defined in the contract as "the duties and costs" of Taylor Energy "pertaining thereto to abandon wells, remove the platform and other facilities, clear the seafloor of obstructions, and take corrective action associated with wells as set forth in Schedule A attached hereto arising pursuant to the terms of the Leases and applicable federal regulations related to such Leases." ECF No. 1 at Ex. 1, § 1.2(d). The contract further specifies that the term "Work" "shall mean operations to satisfy the Obligations and shall include the costs of any equipment, supplies and fees incurred to perform the Work." *Id.* at § 1.2(g). Schedule A attached to the contract lists five categories of 29 separate activities (the "Obligations") that Taylor Energy was to perform and provides the cost estimates associated with each Obligation.

[6] A more comprehensive discussion of the distinctions is set forth in the Joint Status Report (ECF No. 97 at pp. 4, 7).

containment activities by use of its funds outside the trust without any entitlement to seek reimbursement from its funds held in trust.[7]  Interior addresses path two – decommissioning activities – covered by the Trust Agreement and for which Taylor Energy, under the terms of the Trust Agreement, is entitled to seek reimbursement from its funds held in the trust.  *See* ECF No. 87 at pp. 62-64, 187-190; *see also* ECF Nos. 97-7 and 97-8.

In further response to the Court's question, there are no decommissioning actions being undertaken at the MC-20 site, and have been none since 2011.  Containment action has recently been initiated by the Coast Guard, but it has no relationship to the "Obligations" under the Trust Agreement, nor to the trust funds or this lawsuit.  The containment action being undertaken is as follows:

The Coast Guard issued Administrative Order Number 19-001 on October 23, 2018 (the "Admin. Order").[8]  *See* ECF No. 97-1.  Based upon the Admin. Order, on November 16, 2018, the Coast Guard issued a "Notice of Federal Assumtion(sic)" to Taylor Energy (the "Notice").  *See* ECF No. 97-2.  This Notice made reference to and attached a "Decision Memorandum" ("Memorandum"), also dated November 16, 2018.  *See* ECF No. 97-3.  These three documents only address "containment," not "decommissioning."[9]  Relatedly, the Coast Guard unilaterally selected a contractor, Couvillion Group, LLC ("Couvillion"), to design, construct, and install a containment system at the MC-20 site.  Taylor Energy understands that Couvillion's containment

---

[7] It is also important to note that the Coast Guard is not a party to the Trust Agreement or this lawsuit.

[8] No other Orders have been issued to Taylor Energy by the Coast Guard since 2012.  *See* ECF No. 72 at pp. 9-10 of 45.  Notably, for purposes of this matter, Taylor Energy has not received any orders from Defendant Interior.

[9] The Administrative Order's reference to development of a "more permanent solution" is speculative and that "more permanent solution" need not, and very well may not, be performance of any of the remaining Obligations under the Trust Agreement.

actions are currently underway, and Couvillion is in the process of installing its containment system.

Simply put, none of the Coast Guard's actions (or the actions being undertaken by Couvillion) relate to the Trust Agreement's "Obligations" or the $432 million frozen in trust. In addition to the Coast Guard not being a party to the Trust Agreement or a party to this lawsuit, all the Coast Guard's actions concern actions to "contain" oil releases at the MC-20 site; they have nothing to do with the decommissioning Obligations under the Trust Agreement. Moreover, Interior agrees that the funds held in trust, under the terms of the Trust Agreement, <u>cannot</u> be used to fund the containment and monitoring measures required under the Admin. Order, the Notice, and the Memorandum. *See* ECF No. 97 at IIC; *see also* ECF No. 87 at pp. 62-64, 187-190; ECF Nos. 97-7 and 97-8 (Interior's counsel reconfirming Interior's position "that the Trust funds cannot be used for containment activities" and that "use of Trust funds to comply with Administrative Order 19-001 is not permitted under the terms of the Trust Agreement.").

Again, no action by the Coast Guard and, more specifically, the Admin. Order, Notice and Memorandum, has any relevance to the decommissioning "Obligations" under the Trust Agreement nor any relevance to the conduct of Interior in its performance of the Trust Agreement, which Taylor Energy asserts is wrongful and constitutes breach of contract. The issues before this Court do <u>not</u> involve any containment activities and therefore are not affected by the Coast Guard's recent actions; this lawsuit is <u>only</u> about Interior's breach of the Trust Agreement - a contract to which the Coast Guard is <u>not</u> a party.

Despite the Government's recent introduction of the alarming (yet unsupported) theory of Oscar Garcia (which relates to a sheen, not the stability of the site or the environmental or technical feasibility of specific decommissioning activities), the Government has not ordered any

decommissioning activities. More particularly, the Government has not authorized Taylor Energy to do anything differently with respect to the Obligations under the Trust Agreement, and the Government continues to follow the prevailing consensus conclusions of the CERA Report – "Do not pursue additional well intervention because the ecological risks outweigh the possible benefits" and "Do not pursue dredge/dispose or dredge/cap options because the ecological risks outweigh the possible benefits." *See* ECF No. 11-6 at 54, § 6.3.7; *see also id.* at 53, §§ 6.3.1 and 6.3.2. In short, the Government still has not authorized Taylor Energy to pursue any of the remaining Obligations under the Trust Agreement, and no monies are being used from the Trust Agreement.[10] In fact, to the contrary, it expressly instructed Taylor Energy that it should not perform those Obligations unless and until Taylor Energy receives such an instruction from the Government at some uncertain future date, if ever. And, it has publically announced that it intends to hold Taylor Energy's funds in trust indefinitely and perhaps in perpetuity in violation of Louisiana law. This is the very basis of Taylor Energy's lawsuit, and, for these reasons (among others addressed herein and in Taylor Energy's prior briefing), Taylor Energy's breach of contract lawsuit before this Court is not moot and should proceed to the merits.

**3.      The Trust Agreement Is Not Being Used to Advance Decommissioning.**

As addressed above, the Trust Agreement is not being used to advance decommissioning. Indeed, it has not been used for over seven years since 2011. Importantly, the Trust Agreement can only be used to advance the specific subset of decommissioning "Obligations" defined under

---

[10] Even if the Government were to abruptly order Taylor Energy to undertake one of the Obligations under the Trust Agreement (despite a complete absence of any environmental assessment or other scientific support for such action), this would not cure its prior breach. The Government cannot now, years after its 2015 breach of contract, create "evidence" in an effort to defeat Taylor Energy's breach of contract claims. *See, e.g., LAD Servs. Of La., LLC v. Superior Derrick Servs., LLC* (La. App. 1 Cir. 11/17/14); 167 So. 3d 746, 761 (holding that "it is the conduct in failing to perform or in breaching the contract, that is relevant to whether a party was in bad faith, not the party's actions subsequent to the breach.").

the Trust Agreement.  There is no dispute, and even the Government agrees, that no orders "currently require that Taylor undertake any activities identified in the Trust (for example, plugging and abandoning the wells) and thus do not implicate the Trust funds" (ECF No. 97 at pp. 25-26) and "Taylor's Claims Are Not Currently Moot" (*Id.* at p. 25).  For the reasons discussed herein and in the Joint Status Report (ECF No. 97), this lawsuit is not moot and should proceed now to pre-trial discovery followed by trial on the merits.

Respectfully submitted this 21st day of March, 2019.

> */s/ Carl D. Rosenblum*
> CARL D. ROSENBLUM, T.A.
> ALIDA C. HAINKEL
> LAUREN C. MASTIO
> Jones Walker LLP
> 201 St. Charles Avenue, 49th Floor
> New Orleans, Louisiana 70170-5100
> Telephone:  (504) 582-8000
> Facsimile:  (504) 589-8296
> crosenblum@joneswalker.com
>
> And
>
> PAUL A. DEBOLT
> Venable LLP
> 600 Massachusetts Avenue, NW
> Washington, D.C. 20001
> Telephone:  (202) 344-4000
>
> **Attorneys for Plaintiff,**
> **Taylor Energy Company LLC**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 21st day of March, 2019, a true and correct copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record participating in CM/ECF by operation of the court's electronic filing system.

> */s/ Carl D. Rosenblum*